Wong Lin versus Attorney General, Mr. Cox. Good morning, Mr. Cox, if I respectfully reserve three minutes for rebuttal. Three minutes. Great. Granted. Thank you. Your Honor, I'd like to this is quite a large record. I want I want to focus our attention on what's important and maybe simplify the task we have to review this record. First of all, Mr. Lin had a prior hearing in 2008, I believe, on the same issue of the risk of persecution and enforced sterilization in China based on having children born in the United States, three children, which is the same scenario as the before the court today. And so that whole record, which is a couple of thousand pages, is has been adjudicated. And the board, I want to emphasize that the board upheld the denial by Judge Honeyman of that of that asylum claim in a decision which was and so I mean, that sets the sort of the sets in stone the the the scenario or the legal legal scenario of this case as of 2008 when that hearing was held. Mr. Cox, didn't the the BIA maybe go consider all of your arguments and the extensive evidence and show that that you failed to demonstrate any material change in the country's conditions? Did they? Did they? That's what they said. Yes. Did they do that? That's what they said. They did. They they expressed that opinion about the evidence. Correct. As well as prima facie eligible for other relief that your client was considering. Right. So the question is, is there a change, a material change of circumstances? And we can we know that in 2009 when the board decided they as they said that physical coercion was uncommon and unsanctioned. That is the that is the first goalpost. We have to measure it against the second goalpost of what is the conditions now, which according to even the government reports, not only the many reports of campaigns, which I submitted also the Congressional Executive Committee on China, which is a board, a body, including the State Department and members of Congress that reviews the the state of human rights in China. And I submitted all those reports post 2009 and they unanimously say that coercion is is routine in implementation of the family planning policy. Do we need to have any evidence of we're really talking about forced sterilization here? Yes, your honor. Do we need to have any evidence that Chinese nationals who have spent time in the United States and are repatriated are sterilized as opposed to Chinese nationals who remain in China? Well, that that's not a reason the board denied this case. So that's not that issue is not before the court. But it is also answered in this record that Judge Honeyman found that the children are counted in the in the family planning policy because under Chinese nationality law, even U.S. born. I know I know they're counted, but what I'm asking, is there any evidence in the record of actual sterilization of repatriated Chinese? I didn't submit such evidence. There is such evidence. It's anecdotal. Again, the board rejects that evidence as anecdotal only. Your position is that's not necessary, right? Because the fact that there's a policy in place suffices for your client to have a well-founded fear of sterilization. Yes. And that the policy applies to him and his family. It's in place and applies to him. And were he to go back, that he would be subjected to coercive. I mean, what they what they have. These are the record. I would like to only, you know, I have these these these reports of campaigns, hundred day battles and massive family cleanup work. Let's just consider it's Exhibit P. It's the record is 294 to 306. That's from his hometown, home county of Lianjiang County within Fujian province. All of these, all of the evidence that I have submitted that are relevant because they all relate to his home province, which is Fujian province. You know, the problem with that is under our recent case in Zoom, I don't know if I'll pronounce it right. Yes. Yes. Zoom ends with a U as well as well as that Seventh Circuit case. They showed that this was contemporarily happening. Contemporarily? Yes. That that this was not something that happened years ago. You never showed anything like that, that this was a policy then enforced, that was being people were being sterilized and so forth. You had nothing, no contemporary proof that would show that to be so. So how could we say that the BIA erred in this regard? Well, Your Honor, I'm a little bit puzzled by the question because we do have evidence that it is contemporarily enforced in a coercive way. And we can just take the most recent, that is the 2017 congressional report, which is in the record at 108 to 129. And it says, and it cites to that, and then there's even a heading, a heading at the record at 110, coercive implementation. This is the most recent evidence that is in the record. And it lists which provinces to this day have coercive campaigns. And at the record at 111, Fujian is right there as continuing to have these extremely coercive campaigns. And these are, if you look at the campaigns, they do double checkups of check IUD, check pregnancies, obviously an unauthorized pregnancy would be immediately coercively afforded. And the four surgeries, and there's a kind of a lingo with these cases, and the four surgeries are IUD insertion, first trimester abortion, late abortion, right up to birth, and even after birth, in the case I have pending now. Is your, you've referred to your client as a male. Your client's a female, right? Well, the spouse is Chen Mozheng, and I, well, if I erred on that, the policy apply, forced sterilization applies to. Is your client a male or a female? Female, I'm sorry. Okay, all right. Just wanted to make sure, and she's, the reason I said we're talking about sterilization is she's really past the age of pregnancy at this point, or no? No, she's at 42, is still subject. Oh, she's a 42, okay. Right, more than 1977. Okay. What do you think of our latest decision in Lima? How do you pronounce it? That's something I thought you would take and run with. I'm running with it, Your Honor. You took the words out of my mouth. I think that. The problem is that they showed the contemporaneous of what the, of the restrictions in land. They showed that this was something that was contemporarily happening, not that it happened in, your proofs were 2009, 2010, and that any township documents, you quote eminently reasonable. They were 10 years old. Right. I'm not the US government. It's hard to get back. These are internal documents that are not publicly available, that I've been able to get only a few of them from that time period. So I don't rely on that. Rather, I rely on the congressional report from 2017 that says, in Fujian province, it names the province, coercive campaigns are continuing. I'm putting my eggs in that basket, Your Honor. The BIA considered those reports, didn't they? The congressional commission reports? Well, they listed them. I agree that on the decision, they went down the list. If you look where they listed them in the string site, they go through the reports starting with exhibit A, B, and then skipped over to B, X, Y, Z. They cut out all of those campaign reports that they don't even like to mention. And then that's where this case. I rest my case on this point, Your Honor, because they mentioned these reports by only mentioning those words that are favorable to the position of the board, that there is no coercion, that there's no change from the decision. They're just required to consider the evidence, right? They don't have to parse it out and talk about the pros and cons and so on. Yeah, absolutely, Your Honor. That's right. I mean, it is the judgment of the court. Did they consider it or did they merely react? Can you cite some of the evidence that's favorable to your client that the board didn't cite or didn't consider? Yes. All of the CECC reports talk about coercion and they have a section, coercive implementation. All of these congressional reports, let's just focus on the 2017, that compelling women to undergo the four procedures. It's right in the report. This is forced sterilization, not only forced abortion. And that the campaigns continue and that there's language used in official speeches and government reports. So there are two changes that I want to emphasize from the 2009, I guess, view of the family planning policy. First, that it's unsanctioned and we see that it is not only sanctioned but enforced by harsh penalties for people who don't do their dirty work. So it is sanctioned and it is common. And that's the opposite of the 2009 conclusion, unsanctioned and uncommon. But the bottom line is you had nothing that showed contemporarily that people, subproof, that people were actually subjected to these policies which were not up to date. I do have, again, the 2017 congressional report says forced campaign, forced implementation. It's right in this congressional report. Not my client saying so. It's right in the congressional report as it was in prior years of this report. My read of these cases is that generally we've been denying requests to reopen based on the population control policy in this province unless the petitioner can show that the BIA didn't consider certain evidence. So I guess my question is similar to Judge Hardeman's, which is what evidence would you bring to our attention that the BIA did not consider? No, I mean, they listed everything, you know, and the question again is, is it just a reaction? And when they take the evidence that is submitted and only say, only talk about the parts that support a non-coercion view. I'm confused. You just said they listed everything. Where did the BIA list or cite exhibit FF? Well, I was referring to, I think it's on their decision at the record page four at the, you know, the bottom full paragraph where it says, they don't exhibit FF, but they have a list. They list exhibit, do they cite or list exhibit HH? I don't believe so, no. Do they cite or list exhibit JJ? Those are not listed, no, Judge. So they didn't list everything? No, not everything, correct, but they, right, that's right, Your Honor. Well, was it necessary for them to list those? Was it necessary for them to list those? I think they have to, yes, they have to consider, you know, the rule is they don't have to make an exegesis of every piece of evidence, but they have to consider the major, in a significant way, deal with the evidence which is in the record, and they have failed to do that. You know, listening to your argument, I come to the conclusion that they say, even if they listed everything, they came to the wrong conclusion. That's the basic point. No, if they talked about the campaigns that I submitted and then say, well, we don't believe any of this for whatever reason, then they considered it. I think that the, it's a decision for Your Honor to make. I think they did not consider the evidence of coerciveness, which is in black and white in most of the reports that I submitted. I guess I'll hold my rebuttal time. Thank you, Your Honor. Thank you, Mr. Cox. We'll hear from Mr. Tennyson. Good morning. May it please the Court. Robert Tennyson for the government. The Board didn't excuse its discretion here in denying the motion to reopen. As Judge Cohen had said, this record's stale for the most part, right? That all of the information having to do with it. What's stale about Exhibit HH from 2015 and Exhibit JJ from 2016? Right. Those are not stale. I'm talking about the specific locality evidence, right? That evidence is stale. But let's see, FF, or maybe you want to say FF is stale. FF is entitled a woman caught and sterilized after second birth. Right. Not cited by the BIA, correct? I'm going to, I will take your honor. That is where it wasn't cited. The Board doesn't have to cite everything. The Board, in fact, at the very beginning... No, I know it doesn't need to cite everything, but the reason I'm homing in on FF, HH, and JJ is that each of those exhibits includes evidence that's favorable to petitioner. Right, your honor. And in order for us to exercise our review, shouldn't we insist that the agency consider evidence, at least tell us what it thinks about evidence that's supportive of petitioner's claim? Right. If it is considered the evidence, remember very early on, the Board goes through, and even if it doesn't list all the evidence it says, there is this continued evidence of campaigns of using administrative measures, of social compensation fees, et cetera, et cetera, including abortion sterilization. So the Board does say that. It encapsulates this evidence in a way that seems to be very favorable to the petitioner. But it says that evidence, one, that that evidence isn't a change from the evidence that he presented before. And that is that those documents seem very similar to the documents that were in the preceding. And second off, and this is really important, that there has been a big change in country conditions, and that is in January 2016, China moved to a two-child policy, rendering all of those other documents, those earlier documents, largely out of date. So the Board did consider this. But the thing is, is that in the circumstance... All right, so they go to a two-child policy, which is a liberalization, right? Which is a liberalization. Sure. But FF says that after a woman had her second child, she's sterilized, forcibly sterilized. That is a 2001 document. Here, Ms. Lin already has three children, right? That is correct. So why is it unreasonable or irrational for her to fear that if she's repatriated, that she too would be forcibly sterilized? Well, if we look at document FF, it is a document from 2011. And that predates the change in the policy. The policy took place in January. The policy was introduced in January of 2016. It was changed to the two-child policy in 2016. It was introduced. And in fact, the petitioner, the Board does mention those reports and points out that those reports are ameliorative. And if you look at the reports, if you look at the CECC report, or if you look at the Canadian Immigration Board report, both of which are in the record, both of them say that after the change in the policy, to a large extent, it's superficially ameliorative. There's been a change in regulations in various of the provinces. We don't know what those are. And if we're going to say something, if the Board is going to say something about, or if the petitioner wants to show that she's entitled to reopening, she needs to show not only that there is a change in policy, but that that policy will be enforced in a particular way. And if there's that 2006 change in policy, with changes in regulations around the pot provinces, for how those are to be enforced, we aren't going to know what takes place on the ground until we have evidence of things on the ground. And right now, all of the evidence that is introduced with regard to specific individuals. You know, you had a strong argument when I first read the file. The problem is that the limb, limb, however you pronounce it, decision came, came down after, after you, you did the briefing. Right, Trevor. Uh, and, and I was, uh, moved to, to read limb and, and, and, and the other cases from, uh, the Seventh Circuit, I can't pronounce it, nine, nine. Nine or nine. And zoo, zoo, zoo. Right, right. And, and, uh, it, it, it, you're, you're, it appears that you have to overcome our precedent in limb as to why, even if they don't have up to date showing of sterilization or, or retribution that, uh, even though they're, they have nothing to date, they have longstanding procedures, which have not been shown to have changed, even though they are not dated today. And there's nothing we have in the record showing that today people are being subject to the, actually people being subject. But given the limb and the two other cases, you have a, you have a lot of, uh, paddling upstream here. Right, Trevor. I mean, the board certainly could have said more than it did, but the board here did say enough, I think, um, particularly in light of the change in the two child policy. Just not sure that I struggle with that because it certainly supports you because it's a liberalization, right? Right, Your Honor. Um, but this woman already has three children, so she's already out of compliance with the two child policy. Um, you know, the, the cases that, that we were ruling for the government in recent years involving even when the one child policy was in place, the agency was opining that there was evidence in the record to suggest that Chinese nationals who spent time in the United States who had American born children who are repatriated are not subjected to forced abortion, forced sterilization, but rather they were hit with economic sanctions. Right, Your Honor. And you're probably familiar with that line of cases, right? Yes, Your Honor. Um, but this just doesn't seem to fit into that category and they're not making a, uh, an economic persecution argument, but I'm struggling with the logic inherent in the notion that someone with three children, uh, would not still be penalized under a policy, a government policy in a totalitarian state that says you're not allowed to have more than two. Right, Your Honor. Um, one historically, and this, I guess I need to step back. There were some exemptions. For example, if you had a child that was disabled or you had a daughter, the first, as your first child. And in fact, Ms. Lin has both of those. Uh, her first daughter, Tracy is both disabled, severely disabled, and she is a girl, which means that if, if you were to play that old policy forward under those old circumstances, she would be allowed to have a second child. Is she allowed to have a third child now? We don't know because we don't have the evidence in the record. And so why not remand so the evidence can be either marshaled or not marshaled on that question? Well, the petitioner never could have foreseen this problem and brought that evidence in the first instance. But the petitioner has put into the record those exhibits I mentioned that talk about forced sterilization even after the two-child policy. So if, if there's evidence in the record of forced sterilization after this, quote, more liberal policy, it seems pretty supportive of her well-founded fear that she's going to be subjected to that treatment upon her return. Right. Um, let me address that in two points. I think the first point is, is that some of those documents, for example, FF, doesn't post-date the two-child policy. It's, it predates the two, I mean, the two-child policy. Also, if you look, for example, at the CEC reports that the petitioner offered, which do post-date the two-child policy, a lot of it, there is a discussion of one region in which there is a, a campaign for sterilization. But it doesn't date to 2016. It dates to 2015. That's the Wulong. That's the evidence of, I guess, the area in Wulong. However, there's the discussion that they continue to use the same propaganda language. However, if you go back, I mean, that is consistent with, with, I guess, CEC reports that even predate the board's original decision in 2008. If we were to look, let's see, at 1354 in the record, and that is a 2006 CECC record, they talk about, let's see, 1354, they talk about the ways in which the one-child policy was enforced. And this is in the prior, this is during the time of the prior decision that they use in reproductive cycles, mandatory contraception, mandatory birth permits, coercive fines for failure to comply, and in some cases, forced sterilization and abortion. So these were in these documents, these overhead, these 30,000-foot documents, even before, before the board in the prior decision. This is not, so your real argument isn't that it's, it's not so bad. It's, it's still pretty bad, but it ought to change country conditions when compared to 08. That's the crutch of your argument. That is correct. And that we have the change in January 16, which is ameliorative. So, which makes largely, almost all of this evidence, it does make it out of date. But to the extent that he is relying on it, it is similar, it is the same as the evidence the board, in large measure, as the board rejected back in 2008 in finding that there was no change in country conditions. Well, you know, the one thing about your argument that is sort of disturbing to me is, and I dwell mostly upon the fact that there's nothing up to date, contemporary, that even though it's not contemporary, some of this evidence of past requirements and so forth, that there's nothing in the record to show that those requirements and those, those prohibitions are no longer in effect. In other words, there's nothing positive to show that these are not being carried out. These old policies are not being carried out. Let's put it that way. Right. I think there is something that, that does go to that point. And I think it's both in the 2006 or 2017 CECC report and in the Canadian Immigration and Refugee Report. Let's see, Refugee Board. So with regard to, and let me see if I can find this again, the 2017, actually 2016-2017 report, there is language in there along the lines that policy revisions essentially, as of August 2016, at least 29 provincial level jurisdictions reportedly, let's see, reportedly had revised their population and family planning regulations in accordance with the amended national law. That is a positive statement that those, that there are changes in effect. There is a similar type of statement in the, in the Canadian board, say, so that, let's see, according to a source as of 2008, Fujian had revised their regulations. I mean, there are other provinces, but Fujian, where the petitioner is from, had revised their regulations. So there is positive, there is positive evidence in this record that shows that that old evidence having to do with the old policies and old regulations and their enforcement, that's stale. And I guess, I guess your point is, to the extent there are changed country conditions since 2008, it's, it's ameliorative change, not harsher change. That is correct. And I guess the counter argument is, but the ameliorations are still insufficient to give her sufficient assurance that she won't be forcibly sterilized. Right. But the board, but there's a high, but on review, as the factual, as to the factual matter of that, the board, you know, unless the board acted, what, you know, in a way that no reasonable adjudicator or came to a conclusion that no reasonable adjudicator could have come to, the board is, the board wins. Is part of the problem here that there were 37 exhibits of almost 400 pages submitted and it's sort of a document dump on the agency without advocacy that sort of, you know, points. And we've got that quotation that we cite from the Supreme Court about, you know, judges are not like pigs hunting for truffles. And I think that the immigration judges and the BIA would probably have even more sympathy for that sentiment. Is that a problem in this particular case? Can you help us with that? Because I just wonder about that. Right. So the board does get significant numbers of these documents. And oftentimes, these documents are the same documents from case to case. So they've considered them. And in fact, historically, they've considered them multiple times, right? And I think they're sort of, I wouldn't be surprised if there is a sense that us having considered these, do we need to talk about them in detail again? At the same time, I think they did talk about them adequately here. But if they're going to do that, shouldn't they, shouldn't the agency be explicit and incorporate by reference? They could write a magnum opus that says, you know, we've considered the 37 exhibits in great detail. And here's what we think about them and write a lengthy opinion. And then in the next case, when they see the exact same exhibits, they could say, you know, see what we wrote last month. But there's nothing like that in this case. There's nothing like that in this case. No, Your Honor. And the board did in fact, did do that actually in 2007, right? They had this series of decisions where they went through all of this evidence. I guess what I'm trying to get at is, is it enough for counsel to do the document dump on the agency or is it incumbent upon counsel to actually cite the helpful documents in support of petitioner's case? I'm concerned about sandbagging the agency. Is there any case law you can cite on that or help us with that? If that does occur, I'm not saying it definitely occurred here. I don't know. You know, Your Honor. I can't think about anything off the top of my head. I can go and look into it and send the court a letter on that. But do you know whether the advocacy here in the agency realm actually pointed to these things or are these things that we with our brilliant law clerks are finding on our own? In this petition, petitioner's counsel actually, I would give credit to petitioner's counsel. He did go through and he did talk about the various documents throughout. So there is, so there is pointing. There is and the agency responds with these lengthy string sites. And then some of the documents that I adverted to aren't even mentioned. Right. Shouldn't we expect more? I think the honor had, Your Honor, the board hadn't considered this. And especially considering that one, the evidence is, you know, given the change, the ameliorative change, the evidence is stale. And two, the board effectively credited and said, look, these documents say these things, but they don't say anything. You know, they say that the documents talk about forced abortion and, you know, forced abortion and sterilization. And they do. But that was a 30,000 level view of, you know, in those documents. And that's what the documents before said. But on those documents, on the same sorts of documents before the board found that they weren't sufficient to establish that the individual, that Ms. Lin would be subject to sterilization on return because of her three U.S. born children. If the court has no further questions. Okay. Thank you, Mr. Tennyson. We'll hear Mr. Cox on rebuttal. Thank you, Your Honor. So just briefly, you know, about the change from one to two policy, given all that we know about that, there's no change to the coerciveness. They didn't say, and by the way, you can't grab people and throw them in the truck and take them to the hospital. There's no sort of amendment or amelioration that goes to my client's concern about being forced. So the policy is implemented as far as we know, and as the evidence indicates, in exactly the same way as before, except that two children are allowed instead of one. So that's, and that's. Doesn't that make it less likely someone would be treated adversely in 2019 than they would be in 2008? I know, Your Honor. The evidence is that it's still a reasonable fear that this, that Ms. Lynch. But what's the change? What's that? What's the change? That you're allowed to, that you are allowed to, you're permitted to have two children. And instead of only one. But we have three here. So it's, we're beyond the policy limits, no matter how you look at it. And what about the 30,000 foot problem? It seems that the agency's underwhelmed with the high level of generality with the policy without sufficient citation to actual incidents of, of this occurring, particularly with respect to people who are, have spent a lot of time in the United States and have had American born children. Well, again, the, the, the, the, on, on this record, the court accepts that the children count in the policy because they, they have a, in the, in the prior record, they had a travel document that says this, this child is a citizen of China. And that's why Judge Honeyman said, okay, we, we accept that this child is counted in the policy. But is it true we have a lot of cases where that, that was the case and, and it was strictly an economic penalty that the, the family would face based on the birth of the American children? Well, the courts at the, you know, as, as counsel mentioned that, you know, there was a series of decisions, JWS, for example, set the, set the standard that it's not, policy is at least under, under our American law of the, of the word coercive is not coercive. And that's, that's, they, that has held and, and has been upheld by, by other courts. But we're, we have evidence, we're saying we're comparing that bar, that, that starting point to what happened afterward, which is extreme examples of, of coercion. So I, I, we, we show a change of country conditions that the court should recognize and, and at least it should be remanded for the court, for the BIA to properly consider the record in this case. I thank you on this very much. Thank you, Mr. Cox. Thank you, Mr. Tennyson. Appreciate the argument. We'll take the matter under advisement.